UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OKLAHOMA

IN RE:

BANKS, SONJA REGINA,
a/k/a SONJA COOPER

        Debtor.

Case No. 05-30069-R
Chapter 13

Filed/Docketed
June 21, 2006

## ORDER IMPOSING SANCTIONS ON DEBTOR'S COUNSEL

This matter came before the Court for hearing on March 29, 2006, to determine the appropriate nature and amount of sanctions to be assessed against Otis Williams, Jr., counsel for Debtor Sonja Banks (the "Debtor"), and to consider the Chapter 13 Trustee's Request for Imposition of Sanctions Pursuant to Fed. R. Bankr. P. 9011 filed by Lonnie D. Eck, the chapter 13 trustee (the "Trustee"), on January 25, 2006 (the "Request for Sanctions")(Doc. 23), and the Advice to the Court filed by CitiCorp Trust Bank, FSB ("CitiCorp") on January 27, 2006 (the "Statement of Costs")(Doc. 26)(the "Sanctions Hearing").  The parties presented testimony through three witnesses:  Mr. Williams, Richard Chapman of Baer, Timberlake, Coulson & Cates, P.C. ("Baer & Timberlake"), counsel for CitiCorp, and Lisa Bryant, the Trustee's staff attorney.  After considering the evidence presented, the arguments of counsel, the Declaration By Counsel filed by Mr. Williams on April 10, 2006 (the "Declaration"), and the relevant legal authorities, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

**Notice of the Hearing on Sanctions**

On February 15, 2006, the Court entered the Order Setting Evidentiary Hearing to consider Trustee's Request for Sanctions and Citicorp's Statement of Costs on March 8, 2006 (Doc. 31). On February 24, 2006, the Court continued the evidentiary hearing to March 29, 2006. See Doc. 33. Pursuant to the Certificate of Service filed on March 1, 2006 (Doc. 34), notice of the Order Continuing Evidentiary Hearing was mailed to the Debtor, Mr. Williams, and the U.S. Trustee on March 1, 2006. Mr. Williams had notice of the Court's intent to impose sanctions and an opportunity to respond to the Trustee's and CitiCorp's assertion of the amount of damages. The Court finds that notice of this hearing was proper.[1]

**Facts and Procedural History**

Citicorp commenced a foreclosure action in state court with respect to the Debtor's residence in Tulsa, Oklahoma.[2] A foreclosure judgment was entered against the Debtor and in favor of Citicorp and the property was sold at a sheriff's sale on November 29, 2005. A hearing to confirm the sale was scheduled to be held on December 20, 2005.[3]

---

[1] Before imposing sanctions under Rule 9011, the court must give the party against whom sanctions are sought to be imposed clear notice of such intent and an opportunity to respond. See Groetken v. Davis (In re Davis), 246 B.R. 646, 656 (B.A.P. 10th Cir. 2000), *aff'd in part, vacated and remanded in part on other grounds*, No. 00-4071, 2002 WL 1044832 (10th Cir. May 24, 2002).

[2] Citicorp is the successor in interest of Associates First Capital Corporation, the mortgagee of a mortgage covering the Debtor's residence.

[3] On December 20, 2005, the state court entered an order confirming the sale. On January 3, 2006, Citicorp filed an application to vacate the order confirming the sale due to the Debtor's intervening bankruptcy petition. On January 4, 2006, the state court entered an
(continued...)

On December 19, 2005 (the "petition date"), the Debtor, through Mr. Williams, filed a voluntary chapter 13 bankruptcy petition.[4] In her bankruptcy petition, the Debtor represented that she received "approved budget and credit counseling during the 180-day period preceding the filing of this bankruptcy petition" as required by Section 109(h)(1) of the Bankruptcy Code.[5] Doc. 1 at 2. The Debtor failed to file a certificate from the approved nonprofit budget and credit counseling agency that allegedly provided the credit counseling services, as required by Section 521(b)(1) of the Bankruptcy Code (the "Certificate of Credit Counseling").[6] After the petition was filed, the Court issued a Notice of Incomplete Filing (Doc. 6) which required the Debtor to file a Certificate of Credit Counseling within fifteen days or the case would be dismissed. On January 3, 2006, the deadline to file the Certificate of Credit Counseling, the Debtor filed an incomplete form of the Debtor's Certification of Completion of Instructional Course Concerning Personal Financial Management (the "Financial Management Certificate"), which Mr. Williams erroneously designated on the

---

[3](...continued)
order vacating the December 20, 2005, order confirming sale.

[4] Prior to filing the Debtor's bankruptcy petition, Mr. Williams received $1,000 from the Debtor for legal services performed in connection with the petition. See Doc. 10 (Disclosure of Compensation of Attorney for Debtor).

[5] Section 109(h)(1) requires that an individual debtor receive, prior to the filing of a petition, certain counseling from an approved credit counseling agency during the 180-day period prior to the petition date in order to be eligible for relief under any chapter of Title 11. See 11 U.S.C. § 109(h)(1).

[6] Section 521(b)(1) requires that an individual debtor file with the court a certificate from the approved nonprofit budget and credit counseling agency that provided the debtor's requisite credit counseling. See 11 U.S.C. § 521(b)(1).

3

case docket when he electronically filed the document as the "Certificate of Credit Counseling." In the Financial Management Certificate, the Debtor asserted that she completed a financial management course on January 2, 2006. As of January 2, 2006, the Debtor had not received the required credit counseling nor completed a financial management course. On January 4, 2006, the Court issued a Memorandum of Document Deficiency to Mr. Williams advising him of the incorrect filing and required that the error be corrected by January 5, 2006. The Debtor never filed a Certificate of Credit Counseling.[7]

On January 18, 2006, the Court held a hearing on the Trustee's Motion for Immediate Dismissal of Chapter 13 Case and Request for Hearing to Determine Whether Sanctions Should be Imposed filed on January 5, 2006 (the "Motion to Dismiss and Request for Sanctions")(Doc. 15), the Debtor's Motion to Vacate Order of Dismissal [and] Objection to Imposition of Sanctions filed on January 5, 2006 (the "Objection to Sanctions")(Doc. 16),[8] and the Chapter 13 Trustee's Response to Objection to Motion to Dismiss and Request for Sanctions and Brief in Support of Motion to Dismiss and Request for Sanctions filed on January 13, 2006 (the "Brief in Support of Dismissal and Sanctions")(Doc. 21)(the "Dismissal Hearing").

During the Dismissal Hearing, the parties stipulated that–

---

[7] In his Objection to Sanctions, Mr. Williams asserted that the Debtor "initiated" the process of obtaining her Certificate of Credit Counseling on January 2, 2006. The Debtor completed her credit counseling on January 10, 2006.

[8] Although the Debtor moved to vacate the dismissal, the case had not been dismissed. Thus, the Court disregarded the Debtor's motion to vacate the dismissal.

1. The hearing on confirmation of the sale of the Debtor's property in the state foreclosure action was scheduled for December 20, 2005 (which hearing was held one day after the petition date).

2. Mr. Williams filed the bankruptcy petition with knowledge that the Debtor had not yet received the requisite credit counseling.

3. The Debtor did not complete her credit counseling until January 10, 2006.

When Mr. Williams filed the Debtor's bankruptcy petition, he had full knowledge that the Debtor had not obtained the requisite credit counseling. However, on page two of the bankruptcy petition, the Debtor falsely certified that she had received the required credit counseling. Mr. Williams knowingly filed a false bankruptcy petition.[9] The Debtor and Mr. Williams misled the Court and the Trustee to believe that the Debtor was an eligible debtor under Section 109(h) of the Bankruptcy Code. See *supra*, note 3. The Debtor and Mr. Williams filed the false and improper bankruptcy petition in order to stop the confirmation of the sale of the Debtor's property. Based upon the stipulations and the evidence presented at the Dismissal Hearing, the Court concluded that sanctions against Mr. Williams were

---

[9] Federal Rule of Bankruptcy Procedure 9011(b)(1) provides that --

By presenting to the court . . . a petition, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, – (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation[.]

Fed. R. Bankr. P. 9011(b)(1). "If, after notice and a reasonable opportunity to respond, the court determines that [Rule 9011(b)] has been violated, the court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated [Rule 9011(b)]". Fed. R. Bankr. P. 9011(c).

appropriate. The Court ordered any party in interest that incurred damages as a result of Mr. Williams's inappropriate conduct to file a pleading setting forth the nature and amount of damages incurred. See Minute Order, Doc. 22.

On January 25, 2006, the Trustee filed the Request for Sanctions. Doc. 23. In his Request for Sanctions, the Trustee seeks an order requiring that Mr. Williams (i) pay the Trustee his reasonable attorney fees in the amount of $1,522.50, and (ii) disgorge the entire attorney fee in the amount of $1,000, which he received prior to the filing of the case, by paying that sum to the Clerk of the Bankruptcy Court. The Trustee's Request for Sanctions included a description of the time spent and costs incurred by his staff attorney as a result of Mr. Williams's inappropriate conduct. The Trustee's staff attorney expended 7.2 hours preparing the Motion to Dismiss and Request for Sanctions and Brief in Support of Dismissal and Sanctions and research related thereto, .80 hours preparing for and attending the hearing on the Motion to Dismiss, .30 hours reviewing the documents and pleadings filed by Mr. Williams with respect to the Motion to Dismiss, and .40 hours communicating with Hummingbird Credit Counseling agency with respect to the Debtor's credit counseling. The Trustee's staff attorney's hourly rate is $175.00. The Trustee further asserted that he expended an additional four hours with respect to this matter but did not request compensation for this additional time. In his Declaration, Mr. Williams stated that he had no opinion with respect to the fees requested by the Trustee. See Doc. 42 at 1.

On January 27, 2006, CitiCorp filed its Statement of Costs. In the Statement of Costs, Citicorp alleged that it incurred the following costs as a result of Mr. Williams's improper

filing:

| | |
|---|---:|
| Attorney Fees: | $ 450.00[10] |
| Interest @ $7.86 per day (12/20/05 – 2/21/06) | 495.18[11] |
| Court Costs | 93.00[12] |
| Publication Fees | 52.00[13] |
| Total | $1,090.18. |

During the Sanctions Hearing, CitiCorp explained that it had no knowledge of the Debtor's intervening bankruptcy filing at the time of the confirmation hearing held on December 20, 2005.  CitiCorp was forced to vacate the order confirming the sheriff's sale entered on or about December 20, 2005, because the order violated the automatic stay.  CitiCorp asserted that it incurred damages in the aggregate amount of $1,090.18 as a result of the improper bankruptcy filing.  Mr. Williams did not file any objection to the Trustee's Request for Sanctions or to CitiCorp's Statement of Costs.[14]

---

[10] This amount represents Citicorp's counsel's fees and costs for noticing and attending the confirmation hearing.

[11] The per diem interest calculation represents the amount of accrued interest on the judgment against the Debtor during the period from December 20, 2005, to February 21, 2006, which was the date that Citicorp projected as the next possible date to hold another confirmation hearing.  Mr. Chapman testified that the Debtor is liable for any accrued interest.

[12] The court costs include a $41.00 fee to vacate the order confirming the foreclosure sale and a $52.00 fee for publishing the notice of such confirmation of sale.

[13] Mr. Chapman acknowledged that the $52.00 publication fee should be deleted because it was included in the "Court Costs" of $93.00.

[14] In the Declaration, Mr. Williams stated that he would "pay the costs and fees of the Baer and Timberlake firm" and that he had "no opinion in regard to fees and costs requested by the Standing Chapter 13 Trustee."  Declaration at 1.  During the Sanctions Hearing, Mr.
(continued...)

During the Sanctions Hearing, Mr. Williams acknowledged that he knew the Debtor did not have the requisite credit counseling when he filed her bankruptcy petition on December 19, 2005, that he falsely misrepresented that she did have such credit counseling, and that he filed such petition to stop the confirmation of the sheriff's sale on the Debtor's home, which was scheduled to be held on the following day.  Mr. Williams also knew that the Debtor did not have the requisite credit counseling nor the financial management training as of January 3, 2006, when Mr. Williams filed the incomplete form of Financial Management Certificate using the docket event, "Certificate of Credit Counseling."  Mr. Williams knew that if he did not "cure" the deficiency on or before January 3, 2005, in accordance with the Court's Notice of Incomplete Filing (Doc. 6), the Debtor's case would be dismissed.

Mr. Williams explained that he "was willing to take the chance" that he might be sanctioned in order to "save a lady's house."  Tr. at 23.  Mr. Williams testified that he considered the risk a "cost of doing business."  Tr. at 24-25.  Mr. Williams agreed that he should compensate Citicorp for the fees and costs that it incurred as a result of the improper filing.  Mr. Williams further testified that he intended to cease filing any new bankruptcy cases in the Northern District of Oklahoma, with the exception of his intent to re-file a chapter 13 case for the Debtor.  At the conclusion of the Sanctions Hearing, Mr. Williams

---

[14](...continued)
Williams testified that compensation to Baer & Timberlake would be an appropriate sanction. Tr. at 29.

agreed to file a stipulation regarding his commitment to not file any new bankruptcy cases in this jurisdiction.[15]

On April 10, 2006, Mr. Williams filed the Declaration. Doc. 42. In the Declaration, Mr. Williams declared the following –

1. Counsel will file no new Cases in the Northern District of Oklahoma;
2. Counsel will re file [sic] the case at bar upon its [sic] dismissal by the Court;
3. Counsel will re file [sic] the Alvin Jackson case if dismissed by the Court;
4. Counsel will pay the costs and fees of the Baer and Timberlake firm; [and]
5. Counsel has no opinion in regard to fees and costs requested by the Standing Chapter 13 Trustee.

Declaration at 1.

On May 24, 2006, the Court dismissed the Debtor's bankruptcy case and retained jurisdiction to enter this order determining the amount of sanctions against Mr. Williams.

---

[15] During the Sanctions Hearing, the Court also considered the Debtor's Motion for Substitution of Trustee filed on February 10, 2006 (the Motion for Substitution")(Doc. 36), the Objection to Motion for Substitution of Trustee filed by the United States Trustee (the "U.S. Trustee") on March 16, 2006 (the "U.S. Trustee's Objection to Substitution")(Doc. 38), and the Trustee's Objection to Motion for Substitution of Trustee filed on March 21, 2006 (the "Objection to Substitution")(Doc. 39). In the Motion for Substitution, Mr. Williams asserted that the Trustee should be removed from this case (and any future filing by the Debtor) on the grounds of prejudice and bias. In the U.S. Trustee's Objection to Substitution, the U.S. Trustee asserted that Mr. Williams failed to set forth any facts or law to support his motion and failed to demonstrate "cause" under Section 324(a) of the Bankruptcy Code. In the Objection to Substitution, the Trustee denied the existence of any prejudice or bias toward Mr. Williams and asserted that "there is no basis in law or fact for the removal of Lonnie D. Eck as trustee in this case or any subsequent case filed by this Debtor." Objection to Substitution at 1. For the reasons stated on the record in the Sanctions Hearing, the Court denied the Motion for Substitution.

See Doc. 56 and 57.

**Discussion**

A sanction may include "directives of a nonmonetary nature, an order to pay a penalty into court, or, . . . an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Bankr. P. 9011(c)(2). When considering the amount of sanctions to be imposed under Rule 9011, the court must expressly consider a non-exclusive list of three factors in its ruling: (1) the opposing party's reasonable expenses incurred as a result of the violation; (2) the amount necessary to deter future misconduct; and (3) the offender's ability to pay. See White v. General Motors Corp., 908 F.2d 675, 684-85 (10th Cir. 1990). Only attorney's fees and costs that reasonably relate to the sanctionable conduct should be considered when determining the amount of sanctions. See Id. at 684. "A sanction imposed for violation of [Rule 9011] shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2). The primary purpose of sanctions is to deter attorney misconduct, not to compensate the opposing party, and the amount of sanctions should be limited to the amount reasonably necessary to deter the wrongdoer. Id. at 684-85. "Inability to pay what the court would otherwise regard as an appropriate sanction should be treated as reasonably akin to an affirmative defense, with the burden upon the parties being sanctioned to come forward with evidence of their financial status." Id. at 685. A court may also consider factors such as the offending party's history, experience, and ability, the severity of the Rule 9011 violation, the degree to which malice

or bad faith contributed to the violation, and other factors as deemed appropriate in the individual circumstances.  See Blagg v. Miller (In re Blagg), 223 B.R. 795 (B.A.P. 10th Cir. 1998).

### Trustee's Attorney's Fees

The Trustee's staff attorney expended 8.70 hours performing various tasks such as reviewing pleadings and documents filed in the case, research and review of authorities in connection with, and preparation of, the Motion to Dismiss and Request for Sanctions, and communications with the credit counseling agency.  The Trustee's staff attorney's hourly rate is $175.00.  The actions taken by the Trustee and his staff attorney were of a type that required the services of an attorney, as opposed to services that the Trustee should have performed in his capacity as a trustee of the estate.  The Court finds that the Trustee's tasks directly related to and were attributable to the fact that Mr. Williams knowingly filed an improper bankruptcy petition and that the Trustee's staff attorney's hourly rate is reasonable. Mr. Williams provided no evidence to suggest that he would be unable to pay $1,522.50 to the Trustee or that such amount would cause a hardship upon him.  The Court finds that a sanction in the amount of $1,522.50 to compensate the Trustee for time expended does not exceed the amount reasonably necessary to deter Mr. Williams from future misconduct or the Debtor's counsel's ability to pay.

### Disgorgement of Filing Fee

Mr. Williams filed a false petition in order to stop or delay the confirmation of sale of the Debtor's property.  He further delayed such action when he erroneously filed the

incomplete form of Certificate of Financial Management and designated such document as the Debtor's Certificate of Credit Counseling. The Debtor and Mr. Williams filed two false certifications with respect to the Debtor's credit counseling. The result of filing an improper bankruptcy petition was not only a cost of time and expense to the Trustee and Citicorp, but a waste of the Court's resources– time that is needed to address the many meritorious cases pending before this Court.

The Court finds that disgorgement of the $1,000 filing fee that Mr. Williams received prior to the petition date is necessary to deter repetition of similar misconduct and such amount does not exceed Mr. Williams's ability to pay. Thus, Mr. Williams shall disgorge the filing fee in the amount of $1,000 to the Clerk of the Court.[16]

**CitiCorp's Costs**

In its Statement of Costs, CitiCorp asserted that it suffered damages in the aggregate amount of $1,090.18, but admitted that its $52.00 Publication Fee should be deducted from Citicorp's total amount of damages because the fee was accounted for in its "Court Costs." The accrued interest in the amount of $495.18 should also deducted from Citicorp's accounting of costs incurred because the Debtor is liable for any accrued interest. The Court finds that Citicorp's fees and costs in the aggregate amount of $543.00 directly related to and were attributable to the fact that Mr. Williams improperly filed the Debtor's bankruptcy case.

---

[16] Because the Debtor made two false certifications regarding her credit counseling and received the benefit of the automatic stay for about five months, the Court finds that the Debtor is not entitled to a refund of the fees that she paid to Mr. Williams.

The Court finds that a sanction in the amount of $543.00 to compensate CitiCorp for time expended and costs incurred does not exceed the amount reasonably necessary to deter Mr. Williams from future misconduct or Mr. Williams's ability to pay such sanction.

**Declaration by Counsel**

Under the facts of this case and in light of Mr. Williams's declaration that he will abstain from filing new bankruptcy cases in the Northern District of Oklahoma in accordance with the Declaration (Doc. 42), coupled with the sanctions set forth above, the Court finds that the sanctions against Mr. Williams are sufficient to deter future misconduct.

**Conclusion**

Pursuant to Rule 9011(b) and (c) of the Federal Rules of Bankruptcy Procedure, the Court concludes that Mr. Williams violated Rule 9011(b), that Mr. Williams had notice and an opportunity to be heard, and that sanctions against Mr. Williams in the aggregate amount of $3,065.50 are reasonable, appropriate and sufficient to deter repetition of such conduct in accordance with Rule 9011(c) of the Bankruptcy Code.

**IT IS THEREFORE ORDERED** that, within thirty (30) days of the date of this Order, Mr. Williams shall pay $1,522.50 to the Trustee, $1,000.00 to the Clerk of this Court, and $543.00 to Citicorp.

**SO ORDERED** this 21st day of June, 2006.

DANA L. RASURE
UNITED STATES BANKRUPTCY JUDGE